

**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON
THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 3, 2023**

_____
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | ) | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MATTHEW POWELL, | ) | Case No. 23-31026-MVL-7 |
| | ) | |
| DEBTOR. | ) | |
| | ) | |

**ORDER REGARDING OBJECTIONS
TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION**

CAME ON BEFORE THE COURT the *Objection of Timothy Hardin to Debtor's Claim of Exemptions* (the "**Hardin Objection**") [ECF No. 19] filed by Creditor Timothy Hardin ("**Mr. Hardin**") on August 4, 2023, and the *Trustee's Objection to Exemptions* (the "**Trustee's Objection**") filed on the same day, [ECF No. 20] by the Chapter 7 Trustee, Robert Yaquinto (the "**Trustee**"). Both the Trustee and Mr. Hardin seek an order rejecting Debtor Matthew Powell's (the "**Debtor**") claimed homestead exemption. At a hearing on August 23, 2023, the Court heard oral argument and the testimony of both the Debtor and his former spouse, Ms. Amanda Powell

1

("**Ms. Powell**"), before taking the matter under advisement. The following shall constitute the Court's ruling.[1]

I. **BACKGROUND FACTS.**

On November 29, 2022, the 255th District Court of Dallas County (the "**State Court**") entered an agreed judgment ratifying the Proposed Agreed Final Decree of Divorce (the "**Divorce Decree**") between the Debtor and Ms. Powell.[2] As part of that Divorce Decree, the Debtor and Ms. Powell agreed to a division of their marital community property.[3] As part of that division, the State Court ordered that Ms. Powell would be awarded, as her sole and separate property, the homestead property located at 3213 Cross Timbers Lane, Garland, Dallas County, Texas 75044 (the "**Property**"). *Id.* at p. 25. In so doing, the State Court also ordered that the Debtor was divested of all right, title, interest, and claim in and to the Property. *Id.* These orders were made subject to the "terms contained in the section [of the Divorce Decree] entitled *Required Refinancing of Mortgage on Marital Residence* and the obligation to pay [the Debtor] the value of 'his interest' in [the Property]." *Id.*

In this section, the State Court ordered Ms. Powell to refinance the existing home mortgage on the Property and pay the Debtor for "his interest" which was defined as "fifty percent (50%) of the net equity" of the Property.[4] The Divorce Decree requires Ms. Powell to complete the refinancing by the 90th day after entry of the Divorce Decree, but allows up to 30 days' delay on closing without recourse. *Id.* at p. 27. If Ms. Powell failed to complete refinancing by the deadline, the State Court ordered the Property to be listed for sale on the 91st day following entry of the

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b).
[2] ECF No. 27-2, p. 2.
[3] *See* ECF No. 27-1, pp. 25-29.
[4] "Net equity" was defined as "fair market value as determined by the refinance lender's appraisal less the outstanding home mortgage balance and outstanding property tax." *See* ECF No. 27-1, pp. 26.

2

Divorce Decree, and to remain listed for sale until sold. *Id.* at p. 28. Notably, the Debtor was given the right to have a receiver appointed for the sale of the Property if Ms. Powell failed to complete the refinancing and timely pay the Debtor within the requisite period of time.[5] The Property was never refinanced or sold.[6] Mr. Hardin filed an abstract of judgment in the real property records on February 7, 2023, against the Debtor, which attached to the Property as Instrument No. 202300021475.[7]

The Debtor filed a voluntary petition commencing this Chapter 7 bankruptcy case on May 25, 2023.[8] In conjunction with his petition, the Debtor filed his bankruptcy schedules (the "**Schedules**"), including Schedule C, listing which property he elected to exempt. *Id.* On Schedule C, the Debtor claims an exemption in the amount of $320,000.00, listing the Property as his homestead under the Texas state law exemption scheme.[9] On August 4, 2023, both Mr. Hardin and the Trustee filed their objections to the Debtor's claimed homestead exemption.[10] The Court held a hearing on the objections on August 23, 2023, wherein the Court heard oral arguments from counsel for the Debtor, Mr. Hardin, and the Trustee, as well as testimony from the Debtor and Ms. Powell.[11]

At the hearing, the parties stipulated that Mr. Powell moved out of the Property in June of 2022 in contemplation of his divorce from Ms. Powell. Mr. Powell testified that he has no other homestead, and that Mr. Hardin has a judgment against him, alone. Ms. Powell testified that because of Mr. Hardin's judgment lien, she was unable to secure refinancing for the mortgage on

---

[5] *Id.* The State Court also ordered that in the event the Property was sold or refinanced, a creditor's seizure of proceeds (if any) should only be taken from "that creditor's debtor's portion of the sale or refinance proceeds. For example, [the Debtor's] creditor cannot take [Ms. Powell's] share of the proceeds arising from a sale or refinance."
[6] ECF No. 31. Both the Debtor and Ms. Powell testified to this fact on the record at the hearing on August 23, 2023.
[7] ECF No. 19, p. 2 ¶ 6.
[8] ECF No. 1.
[9] *Id.* at p. 16.
[10] ECF Nos. 19 and 20.
[11] ECF No. 31.

3

the Property. Ms. Powell also testified that when she was unable to secure refinancing, she listed the home for sale. For a brief time (approximately three weeks), Ms. Powell testified that she and her children moved out of the Property in order to facilitate open houses and showings. Ms. Powell further testified that a buyer was located and the Property went under contract, but the title company would not close on the Property because Mr. Hardin refused to release his judgment lien against the Property.[12] At the conclusion of the hearing, the Court took the matter under advisement.

## II. LEGAL STANDARD.

Under section 541(a) of the Bankruptcy Code, the commencement of a bankruptcy case creates a bankruptcy estate comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a). The debtor may then remove certain types of property from the estate by electing to take advantage of exemptions described in federal or state law. *See Hawk v. Engelhart*, 871 F.3d 287, 290 (5th Cir. 2017). "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991).

A debtor must file a list of property claimed as exempt on the debtor's schedule of assets. FED. R. BANKR. P. 4003(a). "A party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors … is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." *Id.* 4003(b). "Unless a party in interest objects, the property claimed as exempt … is exempt" and as a result, the property claimed as exempt is not part of the bankruptcy estate. 11 U.S.C. § 522(l); *Hawk*, 871 F.3d at 290.

---

[12] During a portion of this time period, Ms. Powell moved out contemplating sale of the Property. However, when the sale fell through, Ms. Powell and her children moved back into the Property and they continue to reside there.

4

In a hearing on an objection to a claim of exemption, "the objecting party has the burden of proving that the exemptions are not properly claimed" by a preponderance of the evidence. FED. R. BANKR. P. 4003(c); *see also Grogan v. Garner*, 498 U.S. 279 (1991). In determining whether property is exempt, courts consider the law and facts as they existed on the date a debtor filed for bankruptcy. *See White v. Stump*, 266 U.S. 310, 313 (1924). "A [debtor's] right to a homestead exemption becomes fixed at the date of the filing of the petition in bankruptcy and cannot thereafter be enlarged or altered by anything the [debtor] may do." *Stump*, 266 U.S. at 313. However, it is important to remember that "it is the ***entire*** state law applicable on the filing date that is determinative" of a debtor's right to a homestead exemption. *Zibman v. Tow*, 268 F.3d 298, 304 (5th Cir. 2001) (emphasis in original); *see also Myers v. Matley*, 318 U.S. 622, 628 (1943).

### III. LEGAL ANALYSIS.

Under the Texas Constitution, the homestead exemption exists to provide a secure home for the family against creditors. *See Hankins v. Harris*, 500 S.W.3d 140, 145 (Tex. App. – Houston [1st Dist.] 2016, pet. denied); *see also Fairfield Financial Group, Inc. v. Synnott*, 300 S.W.3d 316, 320 (Tex. App. – Austin 2009, no pet.). As described by the Fifth Circuit, "[h]omesteads are favorites of the law and are liberally construed by Texas courts." *In re Perry*, 345 F.3d 303, 316 (5th Cir. 2003). A homestead can belong to either a family or to a "single adult person." TEX. CONST. art. XVI, § 50(a). In order to establish homestead rights, no specific writing is needed, but one must prove both a concurrence of usage and intent to claim the land as a homestead. *Dodd v. Harper*, 670 S.W.2d 646, 649 (Tex. App. – Houston [1st Dist.] 1983, no writ). However, because the homestead right is "an estate in land," courts also require a homestead claimant to hold a present possessory interest in the property.[13] "When a spouse no longer possesses the real property

---

[13] *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex. 1991) ("[O]ne who holds only a future interest in property with no present right to possession is not entitled to homestead protection in that property."); *but see Salomon*

5

that was impressed with homestead rights, [that spouse's] homestead rights in that property cease to exist." *In re Odes Ho Kim*, 748 F.3d 647, 661–62 (5th Cir. 2014).

Once homestead rights in property are established, such homestead rights may only be lost by death, abandonment, or alienation. *Perry*, 345 F.3d at 310; *Paull & Partners Invests., LLC v. Berry*, 558 S.W.3d 802, 809 (Tex. App. – Houston [14th Dist.] 2018, no pet.). "[T]o abandon a homestead[,] a party must forsake and leave it with the intent never to return to it again as a homestead." *McMillan v. Warner*, 38 Tex. 410, 414 (1873); *see also Drake Interiors, Inc. v. Thomas*, 544 S.W.3d 449, 455 (Tex. App. – Houston [14th Dist.] 2018, no pet.). Alienation occurs when title to the property is transferred or conveyed to another, regardless of whether the grantor retains possession of the property. *Perry*, 345 F.3d at 310, n.8; *Berry*, 558 S.W.3d at 809, n.4.

In Texas, "one spouse may abandon his homestead interest while his spouse retains her homestead interest." *See Synnott*, 300 S.W.3d at 321 (gathering cases). Consequently, "[t]he homestead character of the property is not destroyed by a divorce if one of the parties to the divorce continues to maintain it as a homestead." *Marincasiu v. Drilling*, 441 S.W.3d 551, 560 (Tex. App. – El Paso, 2014). Changing residence alone is not enough to show abandonment of homestead. *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 808 (Tex. App. – Austin 2004, pet. denied); *Farrington v. First Nat'l Bank of Bellville*, 753 S.W.2d 248, 251 (Tex. App. – Houston [1st Dist.] 1988, writ denied).

Abandonment of a homestead occurs "when the homestead claimant ceases to use the property and intends not to use it as a home again." *Churchill v. Mayo*, 224 S.W.3d 340, 345 (Tex. App. – Houston [1st Dist.] 2006, pet. denied). Texas law unequivocally requires "undeniably clear"

---

*v. Lesay*, 369 S.W.3d 540, 554 (Tex. App. –Houston [1st Dist.] 2012, no pet.) ("So long as real property is a family homestead by virtue of one spouse's intention and use, that property is protected by the homestead exemption, unless abandonment is plead and proved.").

evidence "beyond almost the shadow at least (of) all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption." *Florey v. Estate of McConnell*, 212 S.W.3d 439, 444 (Tex. App. – Austin 2006, pet. denied) (quoting *Burkhardt v. Lieberman*, 159 S.W.2d 847, 852 (Tex. 1942)). Additionally, "to be abandonment that would subject the homestead property to seizure and sale, there must be voluntary leaving or quitting of the residence." *Id.* (citing *King v. Harter*, 8 S.W. 308, 309 (Tex. 1888)).

In 1897, the Texas Legislature opted to exempt any proceeds from the sale of homestead property for a term of six months in order to give Texans a chance to reinvest in another homestead without being first subject to the claims of their creditors. *See Matter of England*, 975 F.2d 1168, 1174 (5th Cir. 1992) (discussing TEX. PROP. CODE § 41.001(C)). However, the proceeds lose their exemption after those six months, unless they are invested in another exempt Texas homestead. *Id.* This statutory scheme is commonly referred to as the "Texas Proceeds Rule." *Id.* Courts have held that "harmonizing the Texas Proceeds Rule with the Bankruptcy Code's exemption regime can be difficult." *In re D'Avila*, 498 B.R. 150, 153 (Bankr. W.D. Tex. 2013). This is because exemptions are usually determined once and for all shortly after the bankruptcy case is filed. *Id.* (citing *Zibman*, 268 F.3d at 302). In *Zibman*, the Fifth Circuit explained that courts must look to "the ***entire*** state law applicable on the filing date" in order to determine a debtor's entitlement to a homestead exemption under the Texas Proceeds Rule. 268 F.3d at 304 (emphasis in original) (citing *Myers*, 318 U.S. at 628)).

In Texas, a trial court presiding over a divorce may divide property in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage. *Magallanez v. Magallanez*, 911 S.W.2d 91, 93–94 (Tex. App. – El Paso, 1995, no writ); TEX. FAM. CODE § 3.63. A court has the ability to order the homestead property sold as part of a

7

divorce, and in such cases, the full proceeds of such a sale retain their exempt status pursuant to the Texas Proceeds Rule. *Trigg v. Trigg*, 18 S.W. 313, 317 (Tex. 1891); *see also Synnott*, 300 S.W.3d at 322. The court may **also** award the community homestead to one spouse and require the other spouse to execute a warranty deed conveying to the first spouse any interest in the community property. *Magallanez*, 911 S.W.2d at 93–94. In such a situation, the court can require that the spouse receiving the homestead compensate the other spouse for any community interest in the property. *Id.* Family courts often impose an equitable vendor's lien against community property to secure one spouse's obligation to pay a monetary award that represents the consideration for the other spouse's relinquishment of his or her interest in the marital estate. *McNally v. McNally*, No. 02-18-00142-CV, 2020 WL 5241189 at *8 (Tex. App. – Fort Worth Sep. 3, 2020, pet. denied). Where no such vendor's lien is expressly granted, Texas courts have commonly found that such a lien was **implied** in favor of the conveying spouse to secure payment of the amount awarded, "but the amount secured is limited to the amount of the homestead interest awarded to the other spouse."[14]

In situations where one spouse is awarded sole possession of the homestead property in exchange for providing financial consideration to the other spouse, courts in Texas have consistently held that the dispossessed spouse no longer has an exempt homestead interest in the property, because the *full homestead interest* is conveyed to the spouse that is awarded sole possession of the homestead property. *See, e.g. Rivera v. Wells Fargo Bank, N.A.*, EP-16-CV-00192-DCG, 2018 WL 1547844 at *5 (W.D. Tex. Mar. 29, 2018); *Hankins*, 500 S.W.3d at 146–47 (holding that "[a]fter the divorce, the remaining spouse received the *full homestead interest*

---

[14] *Cole v. Cole*, 880 S.W.2d 477, 484 (Tex. App. – Fort Worth 1994, no writ); *see also McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984); *Crockett v. McSwain*, No. 11-00-00374-CV, 2001 WL 34373604, at *4 (Tex. App. – Eastland Nov. 1, 2001, no pet.).

8

pursuant to the divorce decree") (emphasis added); *Wilde v. Murchie*, 949 S.W.2d 331, 333 (Tex. 1997). However, where a court orders the homestead property sold as part of the divorce, the full proceeds of such a sale retain their exempt status for six months. *Trigg v. Trigg*, 18 S.W. 313, 317 (Tex. 1891); *In re Mitchell*, 80 B.R. 372, 384 (Bankr. W.D. Tex. 1987); *see also Synnott*, 300 S.W.3d at 322. This is because the homestead property is generally the chief asset of the community and the distribution of the proceeds from its sale is central to the property division order.[15]

In the instant case, the Trustee and Mr. Hardin argue that because the Debtor has not lived in the Property for approximately one year prior to filing for bankruptcy that he has abandoned his interest in the Property.[16] Further, the objectors argue that because, under the Divorce Decree, the Debtor has no present possessory interest in the Property, any interest the Debtor retains in potential proceeds has lost its exempt status.[17] Mr. Hardin takes this argument further, asking the Court to determine that the Debtor's claimed homestead exemption cannot avoid his abstract of judgment lien on the Property.[18] In arguing thus at the hearing, counsel for Mr. Hardin cited the Texas Supreme Court's opinion in *Laster v. First Huntsville Properties Co.* for the proposition that a homestead exemption can arise only in the person who has a present possessory interest in the Property.[19]

---

[15] *Delaney v. Delaney*, 562 S.W.2d 494, 496 (Tex. Civ. App. – Houston [14th Dist.] 1978, writ dismissed).
[16] *See* ECF No. 19, p. 2, ¶ 5; *see also* ECF No. 20, p. 3, ¶ 7.
[17] ECF No. 19, p. 2, ¶ 4; ECF No. 20, pp. 2–3, ¶ 7.
[18] ECF No. 19, p. 2, ¶ 6.
[19] 826 S.W.2d at 130. Debtor's counsel dispensed with this argument at the hearing by reference to *Synnott*. Regardless of whether and when one spouse abandons homestead property, the homestead always remains protected by the other spouse's undivided homestead interest, thereby preventing a judgment lien from attaching to the homestead. 300 S.W.3d at 321. The Court will note that *Laster* is not applicable to the instant case, because in *Laster*, the divorce decree divided the ownership of the homestead between the spouses, granting the husband what the Texas Supreme Court deemed a "vested future interest" in the estate in land. 826 S.W.2d at 130. In the instant case, as in *Synnott*, Ms. Powell received the full homestead interest per the Divorce Decree, and the Debtor was divested of all interest, claim, and right to the estate in land. *See* ECF No. 27-1, p. 25. Therefore, the Court rejects Mr. Hardin's argument that his judgment lien could somehow defeat **Ms. Powell's** valid homestead exemption. To be clear, the Court is unclear the basis by which Mr. Hardin's judgment lien prevented the prior sale of the Property at all. "Under Texas law, judgment

9

The Court agrees with the Trustee and Mr. Hardin that the Debtor does not have a present possessory interest in the Property, given the parties' stipulation that he voluntarily moved out in June of 2022 and in light of the provisions of the Divorce Decree divesting the Debtor of "all right, title, interest, and claim in and to [the Property.]"[20] In *Rivera v. Wells Fargo Bank, N.A.*, the United States District Court for the Western District of Texas found that a divorce decree which required one spouse to convey her interest in the homestead in exchange for 50% of the net equity in the property, to be paid after refinancing of the mortgage, ***divested*** the conveying spouse of her homestead interest in the subject property.[21] The Court finds *Rivera* to be instructive in this case. As such, the Court concludes that the Debtor did not, at the time in which he filed his voluntary petition commencing this bankruptcy case, hold a valid homestead exemption in the Property under the Texas Constitution.

However, similar to the conveying spouse in *Rivera*, the Court believes that it is worth noting that the Debtor ***retains his rights*** to "his interest" in the proceeds of either the refinancing or sale of the Property under the Divorce Decree.[22] Despite the fact that exemptions are usually determined shortly after the bankruptcy case is filed, the Fifth Circuit has held that "it is the ***entire*** state law applicable on the filing date that is determinative" of a debtor's right to a homestead exemption. *See Zibman*, 268 F.3d at 304. Under the Texas Proceeds Rule, where a court orders the sale of homestead property in a divorce proceeding, the full proceeds of that sale retain their exempt status for six months after the proceeds are received. *See Trigg v. Trigg*, 18 S.W. 313, 317

---

liens that have been properly abstracted ***cannot*** attach to a homestead while that property remains a homestead." *Synnott*, 300 S.W.3d at 320 (emphasis added).
[20] ECF No. 27-1, p. 25.
[21] 2018 WL 1547844 at *5.
[22] *Id.*

(Tex. 1891)*; see also In re Mitchell*, 80 B.R. 372, 384 (Bankr. W.D. Tex. 1987); *Synnott*, 300 S.W.3d at 322.

In *Zibman*, the debtors sold their homestead three months prior to filing bankruptcy and never reinvested the proceeds in a new homestead. 268 F.3d at 300. When the six month exemption expired, the trustee challenged the exemption of those proceeds from the estate. *Id.* at 301. The debtors argued that the snapshot rule "froze the exemption as it existed on the date of filing" and that postpetition acts or failures to act do not affect the exempt status. *Id.* at 301, 303. The Fifth Circuit rejected the debtors' argument, holding that the six month limit on the exemption was "an integral feature of the Texas law 'applicable on the date of the filing'" and that "this essential element of the exemption must continue in effect ***even during the pendency of a bankruptcy case***." *Id.* at 301 (emphasis added).

The factual scenario is different in the instant case, but "this temporal distinction is insufficient to escape the holding of *Zibman*." *In re Frost*, 744 F.3d 384, 388 (5fth Cir. 2014). The "essential element of the exemption must continue in effect even during the pendency of the bankruptcy." *Id.* (quoting *Zibman*, 268 F.3d at 301). Noting that strict enforcement of the "snapshot rule" is ***not*** in line with *Zibman*, the Fifth Circuit explained, in *In re Frost*, that its prior ruling in *Zibman* gives effect to the fact "that the state's law remains equally enforceable with regard to those in bankruptcy and non-bankruptcy." *Id.* at 388–89. Therefore, the Court concludes that even though the Debtor may not be able to claim a homestead exemption in the Property as of the petition date, if Ms. Powell were to successfully refinance or sell the Property, the Debtor's "interest" in the proceeds from such refinance or sale would become property of the estate by operation of law subject to a valid homestead exemption under the Texas Proceeds Rule.[23]

---

[23] *See Zibman*, 268 F.3d at 305. This conclusion is further supported by the fact that although courts in Texas may order partition of a community homestead by sale, courts are not allowed to order the proceeds of such a sale applied

11

### IV. CONCLUSION.

The Debtor is not entitled to his claimed homestead exemption in the Property under the Texas Constitution. As such, the Court will sustain the objections of the Trustee and Mr. Hardin as to the Debtor's claimed exemption regarding the Property on Schedule C at this time. However, the Court would stress that this is a narrow ruling, based solely on the facts presented to the Court in the instant case and the specific requirement that a homestead claimant must have a present possessory interest in the property in question. Nevertheless, the Court will reiterate that the Debtor's current interest, albeit an equitable interest, constitutes property of the estate protected by section 362(a)(3) of the Bankruptcy Code over which this Court has exclusive jurisdiction under 28 U.S.C. § 1334(e). The Court strongly cautions any party not to attempt to exert control over, transfer, use, devise, or otherwise hypothecate such interest without first obtaining an order from this Court granting specific authority to do so. Based on the foregoing, it is hereby

**ORDERED** that the objections to the Debtor's claimed homestead exemption in 3213 Cross Timbers Lane, Garland, Dallas County, TX 75044, are hereby sustained; it is further

**ORDERED** that a copy of this Order shall be served by first class mail on Ms. Amanda Powell at 3213 Cross Timbers Lane, Garland, TX 75044; and it is further

**ORDERED** that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this order.

### ###END OF ORDER###

---

toward general debts. *See Delaney v. Delaney*, 562 S.W.2d 494, 496 (Tex. App. –Houston [14th Dist.], writ dismissed) (quoting *Klein v. Klein*, 370 S.W.2d 769 (Tex. Civ. App. Eastland 1963, no writ)). This is because such an order would permit creditors to look to property previously beyond their reach, and as such, violates the statutory protection afforded the proceeds from the sale of a homestead. TEX. REV. CIV. STAT. art. 3834 (1966).